J.S26037/14

2015 PA Super 34

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FREDRICK POSTIE, | : | |
| | : | |
| Appellant | : | No. 626 EDA 2013 |

Appeal from the Judgment of Sentence January 15, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division No(s).: CP-39-CR-0004173-2011

BEFORE: BENDER, P.J.E., SHOGAN, and FITZGERALD,[*] JJ.

OPINION BY FITZGERALD, J.:                    Filed:  February 17, 2015

Appellant, Fredrick Postie, appeals *pro se* from the judgment of

sentence of a "flat" term of four months' imprisonment, entered in the

Lehigh County Court of Common Pleas, following his bench conviction of

driving while operating privilege is suspended or revoked[1] ("DWOPS"), a

summary offense.[2]  Appellant alleges the court erred in: (1) denying his

motion for recusal; (2) denying his suppression motion; (3) conducting

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 1543(a).  "This was [Appellant's] 20th conviction for driving
while operating privilege is suspended," and thus the increased penalties of
Section 6503(a.1) applied.  **See** 75 Pa.C.S. § 6503(a.1); Trial Ct. Op.,
4/12/13, at 2 n.5; N.T., Trial & Sentencing, 1/15/13, at 4.

[2] The court also found Appellant guilty of false reports, 75 Pa.C.S. § 3748.

partial and biased proceedings; (4) allowing the Commonwealth to reinstate the charge of DWOPS that was previously withdrawn pursuant to a plea agreement; (5) imposing a flat sentence of four months, without minimum and maximum terms; and (6) ordering his sentence to be served in state prison.[3] We hold: (1) Appellant's flat sentence for the summary offense of DWOPS is not compliant with 42 Pa.C.S. § 9756; and (2) after review of the certified record, it is not clear whether Appellant may serve the instant sentence in state prison pursuant to 42 Pa.C.S. § 9762(a). We find no relief is due on his remaining issues. Accordingly, we vacate the judgment of sentence and remand for resentencing.

The underlying vehicle stop giving rise to these charges will be discussed *infra*, in our disposition of Appellant's suppression claim. On April 9, 2012, Appellant pleaded guilty to false identification to law enforcement authorities and habitual offenders[4] in exchange for the Commonwealth's withdrawing the DWOPS charge. Appellant subsequently withdrew the plea; the circumstances of the withdrawal will likewise be discussed *infra*.

On August 14 and 15, 2012, the trial court conducted hearings on Appellant's suppression motion. Appellant later also filed a motion for the trial judge's recusal, arguing the judge had presided over the suppression

---

[3] For ease of disposition, we have reordered Appellant's issues.

[4] 18 Pa.C.S. § 4914; 75 Pa.C.S. § 6503.1.

hearing, at which Appellant made admissions against his own interest. The court denied both the suppression and recusal motions.

The case proceeded to a bench trial on January 15, 2013, on charges of DWOPS and false reports.[5] The officer who conducted the vehicle stop was the sole witness, and Appellant did not present any evidence or testify. The court found Appellant guilty of both counts and immediately sentenced him to four months in state prison, to be served consecutive to the unrelated state sentence he was currently serving.

Appellant did not file a post-sentence motion, but took this timely *pro se* appeal.[6] He complied with the court's order to file a Pa.R.A.P. 1925(b)

---

[5] On the eve of trial, January 14, 2013, the court entered an order granting, after a hearing, Appellant's "oral motion to discharge" his assistant public defender, John F. Baurkot, Esq. and appointing Attorney Baurkot to act as stand-by counsel. Order, 1/14/13. However, at the commencement of trial, Appellant agreed to be represented by Attorney Baurkot. N.T., 1/15/13, at 4-5.

[6] Two days after sentencing, Attorney Baurkot filed a motion to withdraw as counsel, stating Appellant had "indicated a desire to represent himself in an Appeal." Atty. Baurkot's Mot. to Withdraw as Counsel, 1/17/13, at ¶ 3. The court then issued orders scheduling a hearing on this motion on, respectively, February 21, March 22, and May 1, 2013. On May 1st, it entered an order stating it had held the hearing and granting counsel leave to withdraw. Although the court technically lacked jurisdiction to conduct this hearing and allow counsel to withdraw, **see** Pa.R.A.P. 1701(a), in the interest of judicial economy we decline to disturb Appellant's *pro se* status in the instant appeal. This panel could remand for a "proper" hearing for Appellant's knowing waiver of counsel. However, because Appellant had just filed his own motion to discharge counsel three days before counsel filed his motion, and the court stated it held hearings on both motions, we decline to do so.

statement of errors complained of on appeal. As summarized above, he raises six allegations of trial court error.

Appellant's first claim is that the trial court erred in denying his motion for recusal. In support, he avers the court previously accepted his guilty plea, allowed withdrawal of the plea, and presided over the suppression hearing, at which he "made certain admissions of guilt." Appellant's Brief at 8. Appellant asserts he was prejudiced "with bias that could not have been cured by any other means aside from recusal." *Id.* We find no relief is due.

This Court has stated:

> Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential. We recognize that our trial judges are "honorable, fair and competent," and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially.
>
> > The party who asserts that a trial judge should recuse bears the burden of setting forth specific evidence of bias, prejudice, or unfairness. "Furthermore, a decision by the trial court against whom the plea of prejudice is made will not be disturbed absent an abuse of discretion."

*Commonwealth v. Harris*, 979 A.2d 387, 391-92 (Pa. Super. 2009) (citations omitted).

In support of his argument, Appellant cites *Commonwealth v. Simmons*, 483 A.2d 953 (Pa. Super. 1984). In that case, this Court stated, "In a case where the judge hears highly prejudicial testimony, such as a withdrawn guilty plea, he should recuse himself from sitting as factfinder . . .

." *Id.* at 956 (citation omitted). However, we further note:

> [T]he mere participation by the trial judge in an earlier stage of the proceedings does not provide a *per se* basis for requiring recusal of the trial judge.
>
> > The determination of whether a trial judge should recuse himself depends upon the following: the type of evidence that the judge hears; if the evidence is inadmissible and is of a highly prejudicial nature, the judge should recuse himself or declare a mistrial if it is too late for recusal. The judge should also recuse himself whenever there is substantial doubt as to his ability to preside impartially. The burden to show prejudice, however, is on the party seeking recusal. If the evidence is admissible, or not of a highly prejudicial nature, recusal is not required, and while it may be the better practice to have a different judge preside over trial than preside over pre-trial proceedings, such a practice is not constitutionally required and has not been made the basis for setting aside a verdict reached in an otherwise proper trial. This principle appears to be based on the prevailing view that judicial fact-finders are capable of disregarding prejudicial evidence.

*Commonwealth v. Lott*, 581 A.2d 612, 615 (Pa. Super. 1990).

With respect to the trial judge's presiding over the suppression hearing, Appellant does not explain what "certain admissions of guilt" he made. *See* Appellant's Brief at 8. We note that DWOPS is defined as "driv[ing] a motor vehicle on any highway or trafficway" while one's operating privilege is suspended, revoked, or cancelled, and false reports is defined as "giv[ing] information in oral or written reports . . . knowing or having reason to believe that the information is false." 75 Pa.C.S. §§ 1543(a), 3748.

The Commonwealth points to the following testimony by Appellant on cross-examination:

> [Commonwealth: This was the vehicle [t]hat you were driving while you were suspended[?]
>
> [Appellant:] Correct.
>
> *    *    *
>
> Q.  Did you lie to [Pennsylvania State Police Trooper Larry James McDaniel, the officer who stopped you]?
>
> A.  I gave him false identification, yes.

**See** N.T. Suppression H'rg, 8/15/12, at 18, 19; Commonwealth's Brief at 8.

The trial court found recusal was not necessary, stating: "I was capable of rendering a fair decision regardless of what I heard at [Appellant's] guilty plea and pretrial hearing." Trial Ct. Op. at 3-4. The charges against Appellant—DWOPS and false reports—were relatively simple; the issues before the trial court were whether Appellant drove while his driving privilege was suspended or revoked and whether he gave information he knew to be false to Trooper McDaniel. On appeal, Appellant makes no argument that his admissions at the suppression hearing were inadmissible or that trial proceedings were flawed. **See Lott**, 581 A.2d at 615. We reject, on this same ground, Appellant's argument pertaining to the trial court's presiding over his initial guilty plea. In light of the foregoing, as well as the "prevailing view" that a trial judge is "capable of disregarding prejudicial evidence," we hold the trial court did not abuse its

discretion in denying Appellant's recusal motion. *See Harris*, 979 A.2d at 391-92; *Lott*, 581 A.2d at 615.

Appellant's second claim on appeal is that the trial court erred in finding Trooper McDaniel articulated the requisite reasonable suspicion to stop him, and consequently, erred in denying his suppression motion. Appellant contends Trooper McDaniel's purported reasons for stopping him— tinted windows and a prior encounter with the same vehicle several months earlier—were deficient because: (1) the trooper did not "bother to test the light transmittance levels of the window in question" and did not have the equipment with him to do so; (2) the "alleged violation . . . could not possibly have been corroborated through investigation or independent evidence;" (3) no citation for tinted windows was ever issued; and (4) although "Trooper McDaniel stated he could not see through the window on the day of the stop, in full sunlight, he, while in court [at the suppression hearing] under artificial lighting, said of Defense exhibit-1, a window tinted to the same degree as the windows on the vehicle in question, that he was able to see through it." Appellant's Brief at 9, 10, 12 (citation to suppression transcript omitted). Appellant concludes Trooper McDaniel's "simple statement . . . that he knew the tint was in violation of the Inspection Code amounted to nothin[g] more than a conclusory statement to the trooper's belief" and was "simply [a recitation of] the elements of the alleged vehicle infraction." *Id.* at 12. We find no relief is due.

This Court has stated:

> An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Muhammed*, 992 A.2d 897, 899-900 (Pa. Super. 2010)

(citation omitted).

Section 6308 of the Motor Vehicle Code provides that when a police officer

> has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle . . . for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

> [T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized

and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [stop] warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

. . . [”]**While an actual violation need not be established, a reasonable basis for the officer's belief is required to validate the stop.**"

*Muhammed*, 992 A.2d at 900-01 (citations omitted) (emphasis added).

At the suppression hearing, Trooper McDaniel testified to the following. "Several months" before the instant vehicle stop, Trooper McDaniel had stopped a car for window tint on the side and rear windows. N.T. Suppression H'rg, 8/14/12, at 7-8. He issued a citation to the driver, Kerry Hoffman, who was also the owner of the vehicle, as well as a written warning for the window tint violation and instruction to remove the window tint.

On July 3, 2011, at approximately 7:56 PM, Trooper McDaniel saw the same car. His "initial observation of the vehicle was that it had dark window tint on the rear sides and rear window, which did not permit [him] to see inside of the vehicle." *Id.* at 7. The trooper testified that window tinting is governed by Sections 4524(e)(1) and 4107(b)(2) of the Motor Vehicle Code.[7] *Id.* at 8. The trooper followed the vehicle, at which point he could

_____

[7] Section 4524(e)(1) provides: "No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person

not "see the driver who was sitting in the driver's seat through the rear window." *Id.*

In denying Appellant's suppression motion, the trial court held:

> I find credible [Trooper McDaniel's] testimony that he could not see through the rear window and that he believed the tint to be so dark that it was in violation of the inspection code. Furthermore, McDaniel had seen this same vehicle before and issued the driver a warning to have the tint removed. **Upon seeing it a second time in the same condition**, McDaniel likely had probable cause to pull the vehicle over.

Order, 10/15/12, at 2 n.1 (emphasis added).

In light of the trial court's specific finding that Trooper McDaniel's testimony was credible, we find no abuse of discretion in its holding that the trooper stated specific observations and properly concluded that criminal activity was afoot. *See Muhammed*, 992 A.2d at 900-01. The trooper clearly testified several months earlier, he issued a warning to the driver of the vehicle to remove the tint on the windows, and on the day in question, observed the same vehicle with windows dark enough that he could not see through them. Furthermore, we find no merit to Appellant's argument that he was not issued a citation for tinted windows, as the law does not require

---

to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S. § 4524(e)(1).

Section 4107(b)(2) sets forth the summary offense of "unlawful activities." *See* 75 Pa.C.S. § 4107(b)(2). Trooper McDaniel acknowledged this, stating: "4107(b)(2), which is unlawful activities, would reference the inspection manual." N.T., 8/14/12, at 9. However, there was no further discussion or explanation about an inspection manual.

a violation to be established. ***See id.*** Accordingly, we do not disturb the trial court's suppression order.

Appellant's third claim on appeal is that the court improperly made biased and inflammatory remarks during the suppression hearing. Before citing Appellant's specific challenge, we quote the paragraph surrounding it, in order to give context to his argument:

> To protect our children from the harmful effects of over-exposure to the Sun, we add sun-screening to the rear windows of our sedans[.] For those who[ ] cannot afford to purchase or maintain the fuel bills and payments of a massive SUV, the Pennsylvania Department of Transportation finds a way to discriminate against them by creating rules that could suggest that the children of the less fortunate are of less value than their counterparts whom are more fortunate. **Or as the suppression court suggested, their cargo is more important or more valuable than the little lives we entrust and confine to these same locations.**

Appellant's Brief at 14-15 (citing N.T., 8/14/12, at 35) (emphasis added). Appellant maintains, "When [J]udge Anthony uttered in court that people who have tinted windows on their cars 'are up to no good[,]' he clearly held a negative opinion of me which directly led to the deleterious outcome of this case." ***Id.*** at 15 (citing N.T., 8/14/12, at 31). We agree with the trial court that this issue is waived.

The trial court suggested waiver for lack of specificity in Appellant's *pro se* 1925(b) statement. Pennsylvania Rule of Appellate Procedure 1925(b)(4) provides in pertinent part: "The Statement shall concisely identify each ruling or error that the appellant intends to challenge with

- 11 -

sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). The comment to this subsection acknowledges that vagueness is a "very case specific inquir[y]." However, the comment explains,

> The more carefully the appellant frames the Statement, the more likely it will be that the judge will be able to articulate the rationale underlying the decision and provide a basis for counsel to determine the advisability of appealing that issue. Thus, counsel[8] should begin the winnowing process when preparing the Statement and should articulate specific rulings with which the appellant takes issue and why.

Pa.R.A.P. 1925, *cmt.*

Appellant's 1925(b) statement raises the issue as follows: "3) Whether trial court erred in allowing trial Judge, during suppression hearing, to make inflammatory and bias remarks indicating Defendant was guilty." Appellant's Concise Statement of Errors Complained of on Appeal, 3/22/13, at 1 (verbatim). The trial court stated, "Without a more specific indication of what remarks [Appellant] is referring to, I cannot properly address [his] claim." Trial Ct. Op. at 4.

The suppression hearing was conducted over two days. The first

---

[8] As stated above, Appellant's 1925(b) statement was prepared *pro se*. "Although this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant. Accordingly, a *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court." **Commonwealth v. Lewis**, 63 A.3d 1274, 1278 (Pa. Super. 2013) (citation omitted).

volume of testimony is forty-three pages long and the second is thirty-nine. Appellant's 1925(b) statement does not cite any specific remark or transcript page, but qualifies only that the court's remarks "indicat[ed he] was guilty." *Id.* Without any further explanation by Appellant, we agree with the trial court that the 1925(b) statement was overly vague.

Furthermore, the Commonwealth argues this issue is waived for Appellant's failure to challenge the trial court's remarks in the proceedings below. Commonwealth's Brief at 14-15. We agree. While Appellant's brief identifies the remarks which he now challenges, our review of the record reveals he raised no objection, either contemporaneously or in a post-verdict motion, to them. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Appellant's fourth claim on appeal is that the "trial court err[ed] in allowing the Commonwealth to withdraw a summary offense and later reinstate the same offense." Appellant's Brief at 17 (capitalization removed). In support, he avers: (1) under his initial plea agreement, the Commonwealth agreed to withdraw the DWOPS charge and recommend a sentence of one to six months[9] in exchange for his pleading to habitual offenders and false identification; (2) Appellant pleaded accordingly; (3) the Commonwealth then "abrogated this initial agreement when Assistant

---

[9] The claim that the Commonwealth would recommend a sentence of one to six months appears in the statement of the case section of Appellant's brief. Appellant's Brief at 5.

District Attorney who [sic] was present informed the court something on the order of 'that wasn't my deal, I would recommend the court sentence him to the max', whereupon the court handed down a sentence of 1-24 months for the [habitual offenders] charge, a misdemeanor 2 offense;" (4) the court immediately allowed Appellant to withdraw his plea; and (5) the Commonwealth reinstated the charge of DWOPS. Appellant's Brief at 5, 18. Appellant then concludes that because the Commonwealth failed to honor its "agreement, the court should not have allowed the reinstating of this charge." *Id.* We find no relief is due.

We note:

> Where a plea agreement has been entered of record and accepted by the trial court, the state is required to abide by the terms of the plea agreement. However, prior to the entry of a guilty plea, the defendant has no right to specific performance of an "executory" agreement.

*Commonwealth v. Mebane*, 58 A.3d 1243, 1246 (Pa. Super. 2012) (quoting *Mabry v. Johnson*, 467 U.S. 504 (1984), *disapproved on other grounds*, *Puckett v. U.S.*, 556 U.S. 129 (2009); *Santobello v. New York*, 404 U.S. 257 (1971)).

The trial court recounted the procedural history more simply, as follows:

> As part of [Appellant's] guilty plea of April 9, 2012, the Commonwealth agreed not to pursue the charge of [DWOPS. Appellant] subsequently made the decision to withdraw that guilty plea and, as a result, the Commonwealth determined it would again pursue that charge.

- 14 -

Trial Ct. Op. at 4.

The April 9, 2012 transcript is not included in the certified record, and we therefore cannot ascertain the terms of the agreement as presented to the trial court. Nevertheless, we may find no relief is due. Appellant initially pleaded guilty to habitual offenders, a misdemeanor of the second degree ("M-2"), and false identification, a misdemeanor of the third degree ("M-3"), purportedly in exchange, in part, for the Commonwealth's recommendation of a one to six-month sentence. After he withdrew the plea, the Commonwealth withdrew the M-3 false identification charge, reinstated the charge of DWOPS, and added a charge of false reports. The latter two offenses are both summary offenses.[10]

---

[10] Although this was Appellant's twentieth conviction of DWOPS, the charge remained a summary offense. In **Commonwealth v. Soboleski**, 617 A.2d 1309 (Pa. Super. 1992), this Court explained:

> A violation of section 1543(a)[, DWOPS,] is a summary offense punishable by a fine of $200. 75 Pa.C.S. § 1543(a). If sentenced under the recidivist provision, section 6503, the sentencing possibilities are enlarged—"a fine of not less than $ 200 nor more than $ 1,000 or to imprisonment for not more than six months, or both." 75 Pa.C.S. § 6503. Pursuant to section 106(c) of the Crimes Code, a fine of up to $1000 and/or imprisonment of up to six months alters the grade of the offense, from a summary offense to a misdemeanor of the third degree. **See** 18 Pa.C.S. § 106(c) and (e). However, . . . section 6502(c) specifically states that this classification "as it relates to fines and imprisonment for convictions of summary offenses, is not applicable to [Title 75]." 75

The trial court aptly noted the M-3 false identification charge carried a maximum sentence of twelve months, whereas false reports exposed him only to a $200 fine and no incarceration. *See* 18 Pa.C.S. § 1104(3); 75 Pa.C.S. § 3748;[11] Trial Ct. Op. at 5. The DWOPS charge carried a maximum sentence of six months. 75 Pa.C.S. § 6503(a.1).

In sum, after Appellant withdrew his plea, he was charged with lesser-graded offenses that exposed him to lesser sentences; indeed, false reports did not allow any sentence of incarceration. Furthermore, the DWOPS charge exposed Appellant to a sentence of thirty days to six months, the very same sentence that the Commonwealth allegedly promised to recommend. Appellant's brief ignores these circumstances, which are in his favor, and instead only advances a bald insistence that the Commonwealth should not have been allowed to pursue the so-called "reinstated" charges. Appellant also ignores that the "new" charges carried the very same sentence which the Commonwealth allegedly promised to recommend under the plea agreement. In light of the foregoing, we deny relief on Appellant's

---

Pa.C.S. § 6502(c). Consequently, the offense remains a summary offense.

*Id.* at 1311 n.1.

[11] The false report statute states: "Any person who gives information in oral or written reports required by this subchapter knowing or having reason to believe that the information is false is guilty of a summary offense and **shall, upon conviction, be sentenced to pay a fine of $200**." 75 Pa.C.S. § 3748.

claim.

Appellant's fifth claim on appeal is that the trial court erred in imposing a "flat" sentence on the DWOPS conviction of four months' imprisonment in a state correctional institution. Appellant avers the Sentencing Code, as well as case authority, require a sentence of total confinement to include minimum and maximum terms.[12] We agree and remand for resentencing.

We note Appellant did not raise this claim before the trial court or in his 1925(b) statement. **See** Pa.R.A.P. 302(a), 1925(b)(4). Nevertheless, a claim that a flat sentence should have instead had minimum and maximum terms goes to the legality of the sentence, and such issues are non-waivable. **See Commonwealth v. Milhomme**, 35 A.3d 1219, 1221 (Pa. Super. 2011).

"Our scope of review of challenges to the legality of a sentence is plenary, and the standard of review is *de novo*." **Id.** Appellant's DWOPS conviction, although being his twentieth, is graded a summary offense. **See Soboleski**, 617 A.2d at 1311 n.1; Sentencing Order, 1/15/13. Section 6503 of the Vehicle Code, which governs subsequent convictions of certain

---

[12] Appellant cites Section 9721(a)(4) for the requirement of minimum and mandatory terms. Appellant's Brief at 16. However, Section 9721(a) merely provides that in determining a sentence, the trial court shall consider sentencing alternatives, and the alternative at (a)(4) is total confinement. 42 Pa.C.S. § 9721(a)(4).

offenses, including DWOPS, provides in pertinent part that a person convicted of a sixth or subsequent offense of DWOPS "shall be sentenced to pay a fine of not less than $1,000 and to imprisonment for not less than 30 days but not more than six months." 75 Pa.C.S. § 6503(a.1). Section 9756 of the Sentencing Code provides that in imposing total confinement, the trial court shall specify a maximum period, as well as a minimum sentence that does not exceed one-half of the maximum. 42 Pa.C.S. § 9756(a), (b)(1).

Although our review of Pennsylvania authority has not revealed a decision discussing the applicability of Section 9756 to the particular subsection of DWOPS of which Appellant was convicted, this Court has applied Section 9756 applies to summary offenses and Vehicle Code offenses.[13]

The plain language of Section 9756 of the Sentencing Code directs the trial court to specify minimum and maximum periods imposing imprisonment. *See id.*; *Commonwealth v. Destephano*, 87 A.3d 361, 365 (Pa. Super. 2014) (stating: (1) object of all interpretation and construction of statutes is to ascertain and effectuate intention of General Assembly; (2) every statute shall be construed, if possible, to give effect to all its provisions; and (3) plain language of statute is generally best indicator

---

[13] *Commonwealth v. Basinger*, 982 A.2d 121, 123, 127 (Pa. Super. 2009) (holding sentence of ninety days' imprisonment for DUI was illegal under 42 Pa.C.S. § 9756); *Commonwealth v. Barzyk*, 692 A.2d 211, 215-16 (Pa. Super. 1997) (finding flat sentence of thirty days' incarceration for summary offense of harassment violated 42 Pa.C.S. § 9756).

of General Assembly's intent). Although Pennsylvania courts have found some exceptions provided by statute, none applies in the case before us.[14] Accordingly, we agree with Appellant that his flat sentence of four months is illegal under Section 9756, and we remand for the trial court to impose a sentence that complies with that statute. ***See*** 42 Pa.C.S. § 9756(a), (b)(1).[15]

In so holding, we reject the Commonwealth's arguments in favor of affirming the flat sentence. First, the Commonwealth reasons that Sections 1543(a) and 6503(a.1) of the Vehicle Code, when read together, "create an exception to 42 Pa.C.S. § 9756(b) by permitting a sentencing court to impose a mandatory sentence of 30 days and a discretionary sentence not to exceed six months[ ] for subsequent violations of driving with a suspended

---

[14] ***See Commonwealth v. Bell***, 645 A.2d 211, 217 (Pa. 1994) (reasoning flat five year sentence for possession with intent to deliver at least fifty pounds of marijuana, 35 P.S. § 780-113(a)(30), would stand despite 42 Pa.C.S. § 9756, where 18 Pa.C.S. § 7508(a)(1)(iii) provides mandatory minimum of five years' imprisonment and 35 P.S. § 780-113(f)(2) provides maximum of five years), *cited with approval*, ***Commonwealth v. Ramos***, 83 A.3d 86, 91 (Pa. 2013).

[15] ***See Commonwealth v. Milhomme***, 35 A.3d 1219, 1221-22 (Pa. Super. 2011) (holding flat sentence of four months for delivery of a controlled substance was illegal under 42 Pa.C.S. § 9756); ***Commonwealth v. Mitchell***, 986 A.2d 1241, 1244 (Pa. Super. 2009) (holding flat sentence of six months for violation of protection from abuse order was valid but flat sentence of ninety days for harassment was illegal); ***Basinger***, 982 A.2d at 123, 127; ***Barzyk***, 692 A.2d at 215-16; ***Commonwealth v. Cain***, 637 A.2d 656, 658-59 (Pa. Super. 1994) (finding flat sentence of one year imprisonment for criminal contempt of court illegal because court did not specify any minimum sentence).

license.[ ]"  Commonwealth's Brief at 19.  We reject this interpretation. Section 1543(a) merely defines the offense of DWOPS and states that DWOPS is a summary offense and that an offender shall "be sentenced to pay a fine of $200."  75 Pa.C.S. § 1543(a).  Section 6503(a.1) states, in sum, "**Certain repeat offenses.**—A person convicted of a sixth or subsequent offense under section 1543(a) shall be sentenced to pay a fine of not less than $1,000 and to imprisonment for not less than 30 days but not more than six months."  75 Pa.C.S. § 6503(a.1).  These subsections, independently and read together, do not provide for a flat sentence.

The Commonwealth further contends ***Commonwealth v. Klingensmith***, 650 A.2d 444 (Pa. Super. 1994), "recognized that 75 Pa.C.S. § 1543**(b)** implicitly creates an exception to § 9756(b) by specifically authorizing a trial court to impose a flat minimum mandatory sentence of ninety days for driving with a suspended license when the suspension was the result of a DUI conviction."  Commonwealth's Brief at 20 (emphasis added).  "The Commonwealth submits that a 1543**(a)** violation is similarly situated and thus receives the same treatment."  ***Id.*** (emphasis added).

We disagree, and find ***Klingensmith***, when considered in historical context, supports the opposite result.  The ***Klingensmith*** Court first noted that "[w]here two statutory sections arguably cover the same matter and appear to be inconsistent, the specific provision will prevail over the general provision."  ***Klingensmith***, 650 A.2d at 447.  The Court considered Section

9756 to be the general provision. *Id.* The Court then applied the **then-applicable** version of Section 1543(b), which stated that an offender "shall be sentenced . . . to undergo imprisonment for a period of not less than 90 days." *Id.* at 447 n.7. The **current** version of Section 1543(b) provides that an offender shall "undergo imprisonment for a period of not less than 60 days nor more than 90 days." 75 Pa.C.S. § 1543(b). Section 6503(a.1), which applies to Appellant in this case, provides a similar range of sentence: "not less than 30 days but not more than six months." 75 Pa.C.S. § 6503(a.1). Accordingly, in the present case, there is no specific statutory provision that would prevail over Section 9756's requirement of minimum and mandatory terms.

Appellant's final issue on appeal is that the court abused its discretion in ordering him to serve his sentence for a summary offense in state prison. Although we vacate the judgment of sentence for the reasons set forth above, we address this issue as it may arise at resentencing.

We first consider Section 9762, which governs where a sentence of imprisonment will be served. Subsection 9762(a) applies in the case *sub judice* and states:

> **(a) Sentences or terms of incarceration imposed before a certain date.**—For the three-year period beginning on the effective date of this subsection,[16] all

---

[16] The effective date of Section 9756 is Monday, August 6, 2012. ***See*** 1 Pa.C.S. § 1908; 42 Pa.C.S. § 9762(a). Appellant was sentenced on January 15, 2013, which falls within the three-year period immediately following.

persons sentenced to total or partial confinement for the following terms shall be committed as follows:

(1) Maximum terms of five or more years **shall** be committed to the Department of Corrections for confinement.

(2) Maximum terms of two years or more but less than five years **may** be committed to the Department of Corrections for confinement or may be committed to a county prison **within the jurisdiction of the court**.

(3) Maximum terms of less than two years **shall** be committed to a county prison within the jurisdiction of the court.

*See* 42 Pa.C.S. § 9762(a)(1)-(3) (emphases added).

We also consider Subsection 9762(f):

**(f) Aggregation.–**For purposes of this section, the sentences or terms of incarceration shall mean the entire continuous term of incarceration to which a person is subject, notwithstanding whether the sentence is the result of any of the following:

(1) One or more sentences.

\* \* \*

(4) Any other manner of sentence.

42 Pa.C.S. § 9762(f)(1), (4).

On appeal, the Commonwealth frames Appellant's claim as a challenge to the consecutive nature of his sentence, and thus the discretionary aspects of his sentence. The Commonwealth then reasons Appellant has waived this issue by failing to raise it before the trial court and raise a substantial question. However, Subsection 9762(a) directs that a defendant "shall" or

"may be" confined to state or county prison, depending on the length of the sentence. *See* 42 Pa.C.S. § 9762(a)(1)-(3). Because Appellant's claim goes to the statutory authority of the court to sentence him to state prison, we deem the claim is a challenge to the legality of sentence, and do not find waiver. *See Eisenberg*, 98 A.3d at 1275.

Had Appellant not been serving any other sentence, Subsection 9762(a) would direct the instant sentence for DWOPS, capped by statute at six months, to be completed in a county prison. *See* 42 Pa.C.S. § 9762(a)(3); 75 Pa.C.S. § 6503(a.1). However, the trial court specifically imposed the instant sentence to run consecutive to an unrelated sentence he was currently serving in state prison. N.T., 1/15/13, at 25. The record does not indicate the length of the current state sentence.[17] In light of the fact that the trial court will impose a new sentence upon remand, and the various results that may arise under Section 9762(f), we direct the trial court, at resentencing, to state where Appellant is to serve the new sentence and its reasoning pursuant to Section 9762(f).

Judgment of sentence vacated. Case remanded for resentencing consistent with this opinion.

---

[17] Appellant states in his brief that he "is currently serving a 14-30 month sentence imposed by the Northampton County Court of Common Pleas docketed at CP0002304 (OTN:T1646783) for a conspiracy-burglary charge." Appellant's Brief at 17 n.4. However, without any support it the record, we will not rely on that statement in our disposition.

J. S26037/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2015